AO 241 (Rev. 5785)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

1:CV00-1475

| United States District Court | District | Middle District of Pa. | |
|---|---|---|---|
| Name | Douglas Sickler | Prisoner No. | Case No. |
| | | CP-0018 | |

| Place of Confinement | S.C.I. Waymart<br>P.O. Box 256<br>Waymart, Pa. 18472 |
|---|---|

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Douglas Sickler | v. Raymond Colleran |

The Attorney General of the State of:

Pennsylvania - M. Fisher

## PETITION

1. Name and location of court which enterd the judgment of conviction under attack  Luzerne County
Court House, River Street, Wilkes Barre, Pa. 18702

2. Date of judgment of conviction  September 14, 1994

3. Length of sentence.  90 Months  to  Twenty Years

4. Names of offense involved (all counts)  No. 3273-A, Two counts I.D.S.I., Two counts
indecent assault, one count endangering welfare of children.  No.
No. 3333, One count I.D.S.I., One count endangering welfare of
children.

5. What was your plea? (Check one)
(a) Not guilty ☑
(b) Guilty ☐
(c) Nolo contendere ☐

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

FILED
SCRANTON

AUG 1 7 2000

PER _____
DEPUTY CLERK

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
(a) Jury ☑
(b) Judge only ☐

7. Did you testify at the trial?
Yes ☐  No ☑

8. Did you appeal from the judgment of conviction?
Yes ☑  No ☐

AO 241 (Rev 5/85)

9 If you did appeal. answer the following:

(a) Name of court   Luzerne County Court House        (P.C.R.A.)

(b) Result   Denied

(c) Date or result and citation. it known   December 30, 1997

(d) Grounds raised   Ineffective  assistance of  counsel

_____

(e) If you sought further review on the decision on appeal by a higher state court. please answer the following:

(1) Name of court   Superior Court Of Pa.

(2) Result   Affirmed

_____

(3) Date of result and citation. if known   October 19, 1998

(4) Grounds raised   Ineffective assistance of  counsel

_____

(f) If you filed a petition for certiorari in the United States Supreme Court. please answer the following with respect to each direct appeal:

(1) Name of court   Supreme Court of Pa.

(2~) Result   Petition for allowance of appeal Denied

_____

(3) Date of result and citation. if known   April 28, 1999

(4) Grounds raised   Ineffective assistance of  counsel

_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications. or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☐

11. If your answer to 10 was "yes." give the following information:

(a) (1) Name of court   Attached to the end of my supporting facts, you

(2) Nature of proceeding   will find a list of all previous appeals, if

needed, if not, kindly disregard.

(3) Grounds raised   _____

_____

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☐

(5) Result  _____

(6) Date of result  _____

(b) As to any second petition, application or modon give the same information

(1) Name of court  _____

(2) Nature of proceeding  _____

_____

(3) Grounds raised  _____

_____

_____

_____

(4) Did you receive an evidcatiary hearing on your petition, application or motion?
Yes ☐    No ☐

(S) Result  _____

(6) Date of result  _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐    No ☐
(2) Second petition. etc.    Yes ☐    No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not-

_____

_____

_____

12 State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional gounds at a later date.

AO 241 (Rev. 5/85)

For your information. the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition Will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: __Denial of effective assistance of counsel__

Supporting FACTS (state *briefly,* without citing cases or law) _____

At Sickler's P.C.R.A. hearing, the defendant was represented by Attorney Gerald Grealish. Sickler contends that Mr. Grealish was ineffective for failing to adhere to the

requirements of 42 Pa. c.S.A. S 9545 (D) (1).

Mr. Sickler had witnesses in the Court, ready to testify on

(SUPPORTING FACTS CONTINUED ON ADDITIONAL PAGES)

B. Ground two: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

AO 241 (Rev. 5/85)

C. Ground three: _____

_____

Supporting FACTS (state *briefly*, without citing cases or lay. )  _____

_____

_____

_____

_____

_____

D. Ground four _____

Supporting FACTS (state *briefly*, without citing cases or law):  _____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B. C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐  No ☑

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing   J. Blum,  Luzerne County Public Defenders Office
Wilkes Barre, Pa. 18702

(b) At arraignment and plea   B. Dyller,  Luzerne County Public Defenders
Office,  Wilkes Barre,  Pa.  18702

AO 241 (Rev. 5/85)

(c) At trial   B. Dyller,  Luzerne County Public Defenders Office,
Wilkes Barre, Pa. 18702

(d) At sentencing   B. Dyller,  Luzerne County Public Defenders Office,
Wilkes Barre, Pa. 18702

(e) On appeal   S. Urbanski, 33 West South Street,
Wilkes Barre, Pa. 18701

(f) In any post-conviction proceeding   Gerald Grealish,   1624  Adams Ave.,
Dunmore, Pa.

(g) On appeal from any adverse ruling In a post-conviction proceeding   G. Wassil,
630 North Main Street, Wilkes Barre, Pa. 18705

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☒   No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐   No ☒
(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) Give date and length, of the above sentence _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment *which* imposed the sentence to be served in the future?
Yes ☐   No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*August 8, 2000*
(date)

*Douglas Sickler*
Signature of Petitioner

(7)

SUPPORTING FACTS CONTINUED FROM PAGE 5.

his behalf.  These witnesses would have testified to
Sickler's good character, to his relationship with his family and
friends, and to the fact that the alleged victim had made this
type of false allegations against others, many times in the past,
and was still making this type of allegations, against her Grand-
father, (Albert Snook), just months before Sickler's trial in
1994.

Attorney Grealish's failure to file the proper documents,
as required by 42 Pa. C.S.A. A 9545 (D) (1), severely prejudiced
Sickler when the Court refused to hear their testimony.

To Show how Mr. Grealish's error prejudiced Sickler, here
is a summary of what these witnesses would have testified to on
Sickler's behalf.  ( Have Affidavits to verify these statements,
and all these people are still as ready and willing to testify as
they were then.)

These Statements, along with some of the other issues that
Mr. Grealish raised at the P.C.R.A. hearing, against Att. B.
Dyller, (Sickler's Attorney at Trial), will be shown in the
following pages.

I have also listed all the other issues that Att. Grealish
raised against trial counsel at sickler's P.C.R.A. hearing.  (I
was told I had to list these issues to preserve them.)

Here is a summary of some of the affidavits that Sickler has. These potential witnesses were available and willing to testify on Sickler's behalf, both at Sickler's P.C.R.A. hearing and at Sickler's trial. In order to limit the amount of pages, I will summarize only 6 (Six) of the affidavits to provide you an example of their testimony. All the facts listed, are taken directly from these statements. (I would have enclosed the origional affidavits, if I were sure it would be accepted.)

(1)    Dale Elston, who in the arrest warrant affidavit taken by Lake Township Police Chief, John Mosloski, the alleged victim, Barbara Snook, alleges that Mr. Elston and others were present when the alleged abuse was to have occured. Mr. Elston will testify that there was never such an incident. Mr Elston has known Sickler for over 25 years, and has never seen any signs of abuse or neglect. That the Elston and Sickler families were very close, and shared time, meals cook-outs, ect. In fact, Mr. Elston states that if any of Sickler's children were hurt while playing, Mr. Sickler was the one they would run to for help. Mr. Elston will also testify that the Sickler family was, " a very close and Loving family, and none of the Children ever showed any fear of Sickler". Mr. Elston will also testify that over the years prior to these allegations against Sickler, that Sickler and Jennie (Barbara's mother), had discussed with him, various incidents where Barbara had accused others of these acts, (Albert Snook, Mike Chewey, Matt Lehman), and all these allegations proved to be false. Ant that Barbara filed these

charges against Sickler, only after he made Barbara return her engagement ring to Matt Lehman, who she had just accused of raping and beating her a few weeks prior.

2.)       Twila Chewey, who Jennie Snook, (Barbara's mother) and the Sickler children were living with right after Barbara made these allegations against Sickler. Mrs. Chewey will testify that Barbara Snook personally told her that Matt Lehman had raped her. Mrs. Chewey will also testify that Sickler was a good father, raised Barb as his own daughter, she never saw any signs of abuse. That Barb never feared Sickler, and would go anywhere with him, and even after Barb filed these charges against Sickler, Barb would come to Cheweys home to visit Sickler, and would call Sickler regularly just to talk. Mrs. Chewey will also testify that she had left her own children with Sickler, both before and after Barbara had made these charges against Sickler, and would not hesitate to do so again.

3.)       Clarence Wilkes, who Sickler and family were residing with at Box 21-A when and where Barbara alleges these acts to have occured. Mr. Wilkes will testify that Barbara had accused Al  Snook   Of fondling her breast in the past; and that Sickler was very angry when she told him. Mr. Wilkes will also testify that he is a Viet Nam vet, and as a result, he does not sleep well, walks through and around the home many times each night, and never saw anything that even pointed to the alleged abuse. Mr. Wilkes will also testify that Barbara never feared Sickler, neither before or after she had filed these charges, and that just 5 days before Sickler went to trial on these charges, Barb had came to his home to see Sickler.

5-C

4.)      Albert Harrison, Sickler's step-son, who will testify
that Sickler was a good father, very strict, but loving and fair.
That Sickler didn't even hit his children, and would not even
allow their Grandparents to use corporal punishment on them.  Mr.
Harrison will also testify that, "Barbara had a habbit of saying
stuff like this anytime she didn't  get her own way, or knew she
was in trouble," and gives examples of Barb accusing Matt Lehman,
Mike Chrezney, Albert Snook, Mike Chewey, John Suttlif, and their
ex-landlord, Mr. Jones of raping or molesting her in the past.
Albert will also testify that he nor any of his siblings ever
feared Sickler.  Albert will also testify that Barb accused
sickler of these acts against his younger sisters, and states
that its an "outright lie" , and adds that Sickler even had to
put a screen door on his, (Sickler's) bedroom to keep his children
from sneaking into his bed at night, and still be able to hear
the children during the night.  MR. Harrison will also testify
that he and two of his brothers left their mothers home, two
months before Sicklers trial, and stayed with him untill two
weeks before trial, with their Moms permission.  he will also
testify that Barb made these charges against Sickler only after
she got in big trouble at her Grandparents home, and knew she
would be "Grounded, Big Time", and that even after she made these
charges, Barb would go see Sickler, and visit for hours.

5.)      Douglas Sickler Jr., who will testify that his father
"is Not the monster that Barb is accusing him of being"and states
that "quite the opposite   Dad loved us dearly and did everything
he could to keep us happy and secure." That sickler didn't even

5-D

hit us when we messed up. Doug Jr. will also testify that, " Barb
would say anything to keep herself out of trouble, or just to
start trouble for someone else. Douglas Jr. will also testify
that Barbara accused, "quite a few people of raping or molesting
her in the past", and goes on to explain that Barb had accused
Matt Lehman of raping her, accused his grandfather, Albert Snook,
of molesting her in the past, (and again in 1994, just before
Sicklers trial) accused Mike Chrezney of rape, accused John
Suttlif of "touching her and stuff". And that the Sickler family
even got evicted from their home once, in part due to Barbara
accusing their Landlord, Mr. Jones, of touching her and offering
her money for sex. Douglas jr. will also testify that Barbara
never feared Sickler, and that even after she had filed these
charges against Sickler, she would go visit Sickler.  Douglas
Jr. states that even after Sickler was arrested for these charges,
he and his brothers, in 1994, moved out of their Mothers home,
and spent their summer vacation with Sickler, untill two weeks
before Sickler's trial. And also that in 1993, just two months
after Sickler was arrested, his Mother, Jennie Snook, and all the
children, (Albert, Douglas, Nicholas, Genifer, and Tricia), with
the exception of Barbara, spent Christmas and 3 or 4 more days
with Sickler. No-one ever feared Sickler.

6.)      Leah Mazeika, who will testify that she lived with the
Sickler family in 1989, that she and Barbara were very close and
talked about everything. That Barbara had then told her about
other men "trying things sexually with her, and they were all
false". That Barbara even accused Mrs. Mazeika's brothers, Leon

and Noel Stratton of these things. Mrs Mazeika will also testify

that Sickler was a very good father, and that Barbara started

getting mad at Sickler when he started giving her limits, and

that Barbara hated it because Sickler wouldn't let her go out

with the guy she wanted to. Mrs. Mazeika Has known Sickler all

of her life, and states that Sickler would never do the things

that he is accused of. Mrs. Mazeika states that, "Barbara is

trying to get back at Sickler for being a father, when she didn't

want one.

     Other issues of ineffective counsel, that Att. Grealish

raised against Sickler's trial counsel, (B. Dyller), at Sickler's

p.C.R.A. hearing are as follows:

     That Mr. Dyller also failed to investigate and or interview

Albert Snook, who was also accused by Barbara of molesting her,

before she made these charges against Sickler. (Have Children and

Youth contact sheet, stating that Barbara can not stay with

grandparents, as she has accused Grandfather, (Albert Snook), of

molesting her in the past.) Mr. Snook was again accused of these

acts by Barbara, in 1994, just before Sickler's trial. (Have

Children and Youth contact sheet stating that Barbara said that

Grandfather apologized for the attempted molestation.)

     That Mr. Dyller also failed to investigate and or interview

Laniece Aber, Who Barbara was staying with after she made these

allegations against Sickler. Children and Youth contact sheets

show that Mrs. Aber stated that Barbara is lieing and has made

this type of allegations against others in the past, and she, (

Mrs. Aber), is afraid that Barbara will accuse her husband next

if she, (Barbara), doesn't get her own way.

That Mr. Dyller also failed to interview State Police Officer, Mr. Hayse, of the Fern Ridge State Police Barracks, where barbara first made these allegations against Sickler, even though C&Y contact sheets show that "Barbaras propensity for lieing had came from the Fern Ridge State Police. (At P.C.R.A. hearing, C&Y worker Wilma Snopek testified that the information regarding Barbaras propensity for lieing had come from the State police at Fern Ridge, P.C.R.A. transcript 9/13/94 at 119.)  Mr. Dyller had access to two private investigators, that he chose not to use to help in his investigation, another factor which should be used to assess Mr. Dyllers effectiveness.

These potential witnesses would also have discredited the prosecutions theory and witnesses, who were claiming that Barbara had never accused anyone other than Sickler of these acts, and that Sickler and his family made up these stories after his arrest    C&Y contact shteets from August 1993, show that C&Y had interviewed Lanice Aber, Barbara Snook, (Barbaras Grandmother), and Jennie Snook, Barbaras mother, and these accusations against others by Barbara had surfaced, and that this was before Sickler was even aware of these accusations, as C&Y contact sheets show that after Wilma Snopeks Interview with Jennie Snook, Mrs. Snopek had Jennie Snook call Sickler at work to inform him of these allegations, and to inform him that C&Y did not want him to return to to the home untill they completed their investigation. MR. Sickler was interviewed for the first time aproximately one week later.  all these potential witnesses, that Mr. Dyller

5-6

failed to investigate, would have verified that Barbara had made this type of false allegations many times against others in the past, and were vital to presenting Sicklers defense.  Still Mr. Dyller made absolutely no effort to investigate or interview these witnesses that he definately knew existed, as they were clearlydocumented in the discovery that Mr. Dyller recieved. Mr. Dyllers failure to investigate and prepare for trial shows a great indifference to Sicklers best intrest and clearly prejudiced his defense.

Other issues that Mr. Grealish raised at the P.C.R.A. are :
1)    Mr Dyller also failed to consult adequately with Sickler before trial, and failed to inform him fully on important issues and decissions regarding his defense, in the following respects. Mr. Dyller failed to consult adequately with Sickler in regards to Sickler taking the stand to testify on his own behalf. P.C.R.A. transcript 7/29/97 at 155, show that the only conversation that Mr. Dyller had with Sickler about testifying was during a "short break" during the trial, where he advised Sickler not to take the stand.  trial transcript 9/  /94, show that before Wilma Snopek took the stand, Mr. Dyller had not made a decission as to whether Sickler would be testifying, as he states to the Court, "after She (wilma Snopek, is done, I will decide whether or not my client will testify."  Trial Transcript 9/  /94 at 143-145 show that directly after Mrs. Snopeks testimony, and before the short break in trial, Mr. Dyller had rested his case, and even discussed points of charge with the court. This conversation which Mr. Dyller had with Sickler, after he had already closed

5-H

his the case, merely advised Sickler not to take the stand.   Mr.

Dyller never discussed with Sickler that he could take the

stand and declare his innocense to the jury in his own words.

Nor did Mr. Dyller advise Sickler that he could discuss his

relationship with the alleged victim, and explain to the jury the

circumstances leading up to these allegations made by Barbara.

Mr. Sickler still maintains his innocence 100%, and would testify

that he and Barbara had a very good relationship, although he was

very strict, and that Barbara never feared him, before or after

she made these accusations against him.  Sickler would also

testify that after Barbara accused Matt Lehman of raping and

beating her, that he,(Sickler) made Barbara return her engagement

ring to Mr. Lehman, and firbid him from seeing Barbara.  at that

time for Barbaras saftey, Sickler sent her to her Grandparents

home in Long Pond.( Albert & Barbara Snook).  Shortly thereafter,

Grandmother Snook called the Sickler home and informed them that

Barbara was defying her Grandparents, sneaking out at night with

a boy she had just met, drinking, doing drugs and staying out all

night. (Have C&Y contact sheets to verify Barbaras actions)

Grandmother Snook asked Sickler to come get barbara because she

was out of controll.  Sickler told Mrs. Snook that they would

pick Barbara up Friday night after he got home from work.  It was

then that Barbara made these allegations against him, because she

knew she would be grounded and loose all her privilages for a

very long time due to her actions.  And that barbara knew she

would not have to return home after she made these allegations,

as a school mate had recently gone through such an ordeal.

Sickler would also testify that that the grandparents,
Albert & Brabara Snook, (at the time in question, Barbara Walker),
were living with the Sickler family at KP11, Harveys Lake, where
and when Barbara alleges these acts to have occured.   School
records for Patricia Walker would verify this. Sickler would
testify that at Maple Street, Harveys Lake, where Barbara alleges
more abuse to have happened, that Terry White was residing with
the Sickler family.  have a statement from Kay Elko, who was Mr.
Whites girlfriend at the time, and was at the Sickler home regularly
to verify this, and that there were no signs of abuse, or any
sign of fear from Barbara.  Mr. Sickler would also have testified
and shown where C&Y contact sheets showed that the allegations
made against others by Barbara, had origionaly came from others,
(Laniece Aber, Barbara Snook Sr., Jennie Snook, ect.) to prove
to the jury that Sickler did not make up these allegations after
his arrest as the prosecution was telling the jury.  This is just
a brief summary of what Sickler would testify to.  Mr. Dyller
admits, P.C.R.A. transcript 7/28/97 at 84, that he did not have a
lenghty indepth presentation on testimony, buthe had to do it if
that decision was made".  Mr. Dyllers advice for Sickler not to
testify, that was given during a short break, (Aprox. 30 min.),
after he had already rested his case, and even discussed points
of charge with the court, can in no way be considered a "full
consultation with counsel."  mr. Dyllers advice, and suggesting
that testifying usually does more harm than good, seems highly
inaccurate and not in Sicklers best intrest, especially in a case
of such a sensitive nature, and where the outcome of the trial

boiled down to a credibility contest between the alleged victim and Sickler, as there was no physical evidence or eye witnesses to the alleged acts.

That mr. Dyller failed to move for a mistrial when the prosecutor intentionally elicited the "founded determination from C&Y Srevices worker, Wilma Snopek, (Trial Trans. 9/13/94 at 137). Mr. Dyller objected and was sustained by the Court, and a cautionary instruction was given. Directly after, and in violation of Trial Courts ruling, the prosecutor chose to exploit the founded determination further, (Trial Trans. (9/13/94 at 138), so he merely rephrased the question, in even more devistating terms, just incase the jury missed it the first time. Mr. Dyller objected again, and the Court sustained again, adding "it didn't matter what they found or didn't", and moved on with the trial. There was no cautionary instruction in the second instance, and Mr. Dyller should have moved for a mistrial. Mrs. snopeks opinion that the Abuse was "on going", was her conjectural belief of Barbara's story, and was not based on any objective findings or facts. These statements, which were intentionally elicited and then exploited in violation of Trial Courts ruling, amounted to telling the the jury that a State Agency, C&Y Services, had already proved these allegations to be true, and that the trial was a mere formality.

That Mr. Dyller failed to consult with Sickler on the use of Character witnesses. P.C.R.A. Trans. 7/29/94 at 152, will show that Sickler informed Mr. Dyller that he had potential character witnesses, and still Mr. Dyller made absolutely no effort to

explore this line of defense.  Mr Dyller was aware that Character
witnesses alone can provide the reasonable doubt necessary for an
aquittal, and that a jury instruction to that effect might have
been fasioned,(see P.C.R.A. 7/28/97 at 82).  also  Mr. Dyller,
(P.C.R.A. 7/28 97 at 78 - 80),"did not recall" ever discussing
character witnesses with  Sickler, and "did not recall at all",
ever asking Sickler for names and addresses of potential character
witnesses.  Mr Dyller had no reasonable basis for not calling
character witnesses, that Mr Dyller "thought he had more than
character witnesses, is not justification to omit a trial strategy
that could have led to an aquittal on its own.  mr. Dyllers
speculation as to Sicklers prior criminal history being a reason
for not calling character witnesses echos hollow once he indicates
that he don't recall Sicklers proir criminal history, (see P.C.R.A.
7/28/97 at 79).And just for the record, Sicklers prior record
shows no crimes involving minors, nor does it show any crimes
involving crimin falsi.  Mr. Sickler has numerous Character
witnesses who were available and willing to testify on his behalf,
Have affidavits from many of these people, who will speak of
Sicklers good relationship with his children, his family, and
friends. That none of Sicklers children ever feared him, and that
some of these people had even left their own children with Sickler,
without incident, and would not hesitate to do so again. And that
Sickler would never commit the acts he is accused of.  And many
will state that Barbara has made this type of allegations against
others in the past.

5-L

( PREVIOUS APPEAL IF NEEDED )

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court   Luzerne County Court House,   Wilkes Barre, . Pa.

(b) Result   Denied

(c) Date of result and citation, if known   January 23, 1995

(d) Grounds raised   Unknown

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court   Superior Court of Pa.

(2) Result   Affirmed

(3) Date of result and citation, if known   October 16, 1995

(4) Grounds raised   Unknown

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court   Forclosed from filing, due to Att. error

(2) Result   (Was notified by Att. Urbanski of the Superior Court decision on November 28, 1995, 13 days  after my time to file expierd.)   Copy of letter attached.

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court   Luzerne County Court House, W.B. , Pa.

(2) Nature of proceeding   P.C.R.A.

(3) Grounds raised   Denial of effective assistance of Counsel

(3)

# HAGGERTY & URBANSKI

### ATTORNEYS AT LAW
840 WEST MARKET STREET
KINGSTON, PA 18704
(717) 288-3631
(717) 822-7877
FAX (717) 288-4827

STEPHEN K. URBANSKI
JAMES J. HAGGERTY

RICHARD J. CONFAIR
COUNSEL TO THE FIRM

November 28, 1995

MS MARION SICKLER
R. D. #2 BOX 21-AA
HARVEY'S LAKE, PA  18618

     RE:  Commonwealth v. Sickler

Dear Marion:

     Please be advised that the Superior Court has affirmed the decision of the Court of Common Pleas and upheld the conviction.  At this time I would suggest another appeal on the grounds of newly discovered evidence.  What this means is we must get affidavits concerning the fact that the victim lied on the stand with regard to the charges.

     Please contact my office at your earliest convenience in order to discuss this matter along with the outstanding legal fee.

     I look forward to hearing from you in the near future.

     Thank you.

               Very truly yours,

               Stephen K. Urbanski

SKU/bhm

FILE COPY

1 CV 00 - 1475

AO 241 (REV. 5185)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner
must fill in the name of the state whae the judgment was entered. If petitioner has a sentence to be served
in the future under a federal judgment which he wishes to attack, he should file a motion under 28
U.S.C. § 2255, in the federal court which entered the judgment.)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Instructions-Read Carefully

(1) This petition must be legibly handwritten or typewritten, and signed by the petitioner under penalty of perjury. Any false
statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered
concisely in the proper space on the form.

(a) Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No
citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a
separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary funds for transcripts, counsel. appeal, and other costs connected with a motion of this
type, you may request permission to proceed *in forma pauperis*, in which event you must execute form AO 240 or any
other form required by the court, setting forth information establishing your inability to pay the costs. If you wish to
proceed *in formal paupers*, you must have an authorized officer at the penal institution complete the certificate as to the
amount of money and securities on deposit to your credit in any account in the institution. If your personal account
exceeds $_____, you must pay the filing fee as required by the rules of the district court.

(5) Only judgments entered by one court may be challenged in a single motion. If you seek to challenge judgments entered by
different courts either in the same state or In different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for
relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition is fully completed, the original and at least two copies must be mailed to the Clerk of the United States
District Court whose address is

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.